IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

RYLEE MEINTS, BLAKE
PESETSKY (a/k/a/ Bobbie Pesetsky),
MATTHEW MITTAN, and
ZACHARIAH BORZEKOFSKI,

           Plaintiffs,

vs.

CITY OF WYMORE, NEBRASKA;
WYMORE EMERGENCY MEDICAL
SERVICES; SHAWNA SCHWARTZ,
in her individual capacity, JEFF
ARGO, in his individual capacity,
DARREN ALLINGTON, in his
individual capacity; and MILTON
PIKE, in his individual capacity.

           Defendants.

4:21-CV-3090

MEMORANDUM AND ORDER

The plaintiffs, in their third amended complaint, have alleged claims pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2; the Nebraska Fair Employment Practices Act, Neb. Rev. Stat. § 48-1101 et seq.; and 42 U.S.C. § 1983 for violation of their Constitutional rights secured under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. Filing 46. The defendants have moved to dismiss the plaintiffs' complaint for the failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons that follow, the Court will grant in part, and deny in part, the defendants' motion.

## I. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief. *Id.* at 679.

In assessing a motion to dismiss, a court must take all the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555. The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See id.* at 545. The court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556.

A motion to dismiss under Rule 12(b)(6) tests only the sufficiency of the allegations in the complaint, not the sufficiency of the evidence alleged in support of those allegations. *Stamm v. Cnty. of Cheyenne, Neb.*, 326 F. Supp.

3d 832, 847 (D. Neb. 2018); *Harrington v. Hall Cnty. Bd. of Supervisors*, No. 4:15-CV-3052, 2016 WL 1274534, at *4 (D. Neb. Mar. 31, 2016).

## II. BACKGROUND

The plaintiffs alleged that the City of Wymore and Wymore Emergency Medical Services (EMS) are political subdivisions of the State of Nebraska. Defendants Shawna Schwartz, Jeff Argo, and Darren Allington were employed by, and in positions of power and authority with, Wymore EMS. Argo was the President, Schwartz was the Rescue Chief, and Allington was the Assistant Rescue Chief. Filing 46 at 2. Defendant Milton Pike was the Mayor of Wymore, and defendant Andy Carothers was the City Attorney. Filing 46 at 3.

The plaintiffs alleged that they were employed by the defendants at various times between 2015 and 2020. Filing 46 at 3-4. Each alleged to have experienced, or witnessed sexual harassment, and suffered retaliation for complaining about such conduct.

Rylee Meints, a female, alleged that throughout her employment with the defendants, Allington subjected her to unwelcome, continual, and egregious sexual harassment, which included verbal and written text messages requesting sexual favors, as well as sexually suggestive and offensive comments, statements, and text messages. Filing 46 at 5. Meints also alleged that she witnessed Allington repeatedly subject plaintiffs Pesetsky and Mittan to sexual harassment and gender discrimination similar to what she experienced. Filing 46 at 5-6.

Meints alleged that she complained about Allington's conduct to Schwartz, but Schwartz treated her report as a joke and did not take any remedial action. According to Meints, Schwartz was dismissive of Allington's conduct because "that's just the way he is." Meints also complained about Allington to Mayor Pike and Attorney Carothers, who allegedly responded in

a rude manner, dismissed Meints' complaints, and took no remedial action. Filing 46 at 7. After making her complaints, Meints allegedly was falsely accused of misconduct, was not given notice of a mandatory meeting regarding the false accusation, and then suspended from her employment for missing the meeting. She was eventually terminated from her employment with the defendants. Filing 46 at 7-8.

Plaintiff Blake Pesetsky is a transgender individual, transitioning from female to male. Pesetsky manifests a nonconforming gender appearance, actions, and behaviors. Filing 46 at 3. Pesetsky alleged that he was subjected to egregious and continual verbal and written sexual harassment and gender discrimination from Allington in a manner similar to what Meints experienced. In addition, Allington also exposed his genitals to Pesetsky, and made repeated sexualized comments seeking sexual favors. Filing 46 at 6.

Pesetsky alleged that Argo, Schwartz, and Allington repeatedly demanded that he inform all patients he treated that he was transgender and born a female. Schwartz also made discriminatory, derogatory, and offensive comments about Pesetsky to other employees—which were then conveyed to Pesetsky—and refused to allow Pesetsky to treat patients by himself. *Id.* Pesetsky repeatedly reported Allington's conduct to Argo and Schwartz, who ignored his complaints, laughed at him, and retaliated against him by telling other employees not to trust him. Schwartz allegedly made physical threats against Pesetsky. Pesetsky alleged that he was constructively discharged from his employment with the defendants. Filing 46 at 8.

Plaintiff Matthew Mittan is a gay man who does not meet the sexual stereotypes males are expected to present, and has non-conforming gender appearance, actions, and behaviors. Filing 46 at 4. Mittan alleged that throughout his employment with the defendants, Schwartz continually asked

him about sexual preferences and his sexual practices. Filing 46 at 6. Schwartz would also question the other plaintiffs about whether Mittan attended LGBT parties. Mittan alleged that he opposed and reported the conduct he experienced, after which the defendants retaliated against him and terminated his employment. Filing 46 at 8.

Plaintiff Zachariah Borzekofski alleged that he witnessed the defendants' conduct that is the subject of the other plaintiffs' complaints. Filing 46 at 8. Borzekofski also alleged that he witnessed the plaintiffs reporting the defendants conduct. He alleged that he was closely associated with the other plaintiffs, and due to his associations with the other plaintiffs, he suffered threats of physical violence, harassment, and derogatory comments which made his work conditions intolerable. Borzekofski alleged that he was constructively discharged in February 2020.

## III. DISCUSSION

The defendants have asserted several grounds for dismissal of the plaintiff's claims.

### 1. ABSENCE OF EMPLOYMENT RELATIONSHIP

The defendants assert that Counts I through III of the plaintiffs' third amended complaint must be dismissed for the failure to sufficiently allege an employment relationship with the City or Wymore EMS. Filing 50 at 8. Counts I through III allege claims pursuant to Title VII and Nebraska Fair Employment Practices Act. Filing 46 at 10-11. The sole basis for the defendants' argument for dismissal is that the plaintiffs were volunteer members of Wymore EMS, and not the defendants' employees.

Before the Court is the defendants' motion to dismiss. Disposition of the defendants' motion requires the Court to assume the truth of all factual allegations in the plaintiffs' third amended complaint. *Twombly*, 550 U.S. at

555. The defendants' assertion that the plaintiffs were volunteers is nowhere to be found in the plaintiffs' third amended complaint. The plaintiffs alleged that they were the defendants' employees. At this point in the litigation, the Court must assume the truth of that allegation. A motion to dismiss under Rule 12(b)(6) tests only the sufficiency of the allegations in the complaint, not the sufficiency of the evidence alleged in support of those allegations. *Stamm, 326 F. Supp. 3d at 847*. The plaintiffs' allegations that they were the defendants' employees is sufficient to deny the defendants' motion to dismiss Counts I through III on the grounds that the plaintiffs were volunteers and not employees.

## 2. FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

The defendants assert that Borzekofski failed to exhaust administrative remedies and should be dismissed from Count III of the third amended complaint. Filing 50 at 9. Administrative exhaustion is a prerequisite for claims made pursuant to Title VII and the Nebraska Fair Employment Practices Act. *See Rebouche v. Deere & Co., 786 F.3d 1083, 1086 (8th Cir. 2015)*; *Wendeln v. The Beatrice Manor, Inc., 712 N.W.2d 226, 235 (Neb. 2006)*. The plaintiffs concede that Borzekofski failed to exhaust his administrative remedies. Filing 51 at 6.

The filing of a timely charge with the EEOC is not a jurisdictional prerequisite, but is a condition precedent to filing a suit in federal district court. *Shelton v. Boeing Co., 399 F.3d 909, 912 (8th Cir. 2005)*. However, like a statute of limitation, the failure to file a timely charge is subject to waiver, estoppel and equitable tolling. *Zipes v. Trans World Airlines, 455 U.S. 385, 393 (1982)*. The plaintiff argues that Borzekofski believes he mailed an official complaint to the Nebraska Equal Opportunity Commission, but admits there

is no record of his mailing to be found. Borzekofski's argument does not support a claim of waiver, estoppel, or equitable tolling.

Given the plaintiff's concession, and the absence of any allegation showing that Borzekofski's failure to file a timely charge should be waived or otherwise tolled, the Court finds that Borzekofski should be dismissed from Count III of the plaintiffs' third amended complaint.

### 3. Plaintiffs' § 1983 Claims

Counts IV through VI of the third amended complaint allege claims for violation of Constitutional rights brought pursuant to 42 U.S.C. § 1983. Filing 46 at 11-13. The defendants assert that dismissal of these Counts is warranted because Title VII claims cannot support an action brought pursuant to § 1983. Filing 50 at 10-11. Title VII provides the exclusive remedy for employment discrimination created by its own terms, but its exclusivity ceases when the employer's conduct also amounts to a violation of rights secured by the Constitution. *Henley v. Brown*, 686 F.3d 634, 642 (8th Cir. 2012).

Here, the plaintiffs' have not, as the defendants contend, supported their § 1983 claims by asserting discrimination claims created by Title VII. Instead, the plaintiffs have alleged what they purport to be violations of their Constitutional rights, and seek to have their rights vindicated in a § 1983 action.

In Count IV, the plaintiffs alleged that the individual defendants subjected them to gender-based discrimination and sexual harassment in violation of their rights under the equal protection clause of the Fourteenth Amendment. Filing 46 at 11. The right to be free from gender discrimination is secured by the equal protection clause of the Fourteenth Amendment. *Tipler v. Douglas Cnty., Neb.*, 482 F.3d 1023, 1027 (8th Cir. 2007). The defendants'

motion to dismiss Count IV of the plaintiffs' third amended complaint will be denied.

In Count V, the plaintiffs alleged that they were retaliated against after engaging in protected activities in violation of their Fourteenth Amendment equal protection rights. Filing 46 at 12. The right to be free from retaliation is clearly established as a First Amendment right, but not under the equal protection clause of the Fourteenth Amendment. *Burton v. Arkansas Sec'y of State*, 737 F.3d 1219, 1237 (8th Cir. 2013). The defendants' motion to dismiss Count V of the plaintiffs' third amended complaint as it pertains to the individual defendants will be granted.

In Count VI, the plaintiffs allege that their First Amendment rights to free speech and association were violated. Filing 46 at 12. Essentially, they allege that they were punished and retaliated against because they spoke out, reported, or opposed sexual harassment and gender discrimination, which, according to the plaintiffs, are matters of public concern. Filing 46 at 9. Section 1983 provides a vehicle for redressing claims of retaliation on the basis of the First Amendment. *Tyler v. Univ. of Ark. Bd. of Tr.*, 628 F.3d 980, 986 (8th Cir. 2011). The individual defendants' motion to dismiss Count VI of the plaintiffs' third amended complaint on the ground that it is supported only by the plaintiffs' Title VII claims will be denied.

### 4. COUNT IV QUALIFIED IMMUNITY

The individual defendants argue that they are entitled to qualified immunity in regard to the plaintiffs' § 1983 claims. Filing 50 at 15-20. With respect to the plaintiffs' equal protection clause claim in Count IV, the defendants argue that the plaintiffs' third amended complaint failed to allege who the specific wrongdoers were, that a reasonable officer would not know

that discriminating against the plaintiffs based on their protected class was a violation of their constitutional rights, and that the right to be free from transgender and sexual orientation discrimination was not clearly established at the time of the occurrence described in the third amended complaint.

The plaintiffs have sufficiently alleged who the individual wrongdoers were for several of the alleged discriminatory actions in the third amended complaint. Allington was alleged to be the individual responsible for much of the sexual harassment pertaining to Meints and Pesetsky. He was alleged to have made frequent comments of a sexual nature, and propositioned Meints and Pesetsky for sexual favors. It was also alleged that he exposed himself to Pesetsky. Schwartz was alleged to be the primary wrongdoer for Mittan's claims of sexual harassment. Argo, along with Schwartz and Allington were alleged to have engaged in harassment of Pesetsky and Mittan based on their non-conforming gender characteristics.

Regarding whether a reasonable officer would know that discriminating against the plaintiffs based on their protected class was a violation of their constitutional rights, the defendants argue that the right to be free from sexual orientation and gender identity discrimination was not clearly established in 2015 to 2020. Filing 50 at 13.

Qualified immunity shields public officials from liability for civil damages if their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would know. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he or she is doing violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). To determine whether a right is clearly established, the Court looks for a controlling case or a robust consensus of cases of persuasive

authority. *Dillard v. O'Kelley*, 961 F.3d 1048, 1052 (8th Cir. 2020). There need not be a prior case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. *Id.*

The plaintiffs argue that gender-based discrimination was clearly established prior to the relevant timeframe, but cite only to Title VII cases—not to any case where the issue concerned a Fourteenth Amendment constitutional violation. Filing 51 at 8. It is true that in the years prior to the conduct alleged here, there has been a shift in the law away from criminalizing same-sex conduct and marginalizing the rights of certain individuals to enjoy and appreciate the same fundamental liberties that are accorded to persons who conform to the traditional sexual stereotypes males and females are expected to follow. *See Obergefell v. Hodges*, 576 U.S. 644 (2015); *United States v. Windsor*, 570 U.S. 744 (2013); *Lawrence v. Texas*, 539 U.S. 558 (2003). That doesn't, however, give this Court leave to find that a freestanding constitutional right that has not been recognized by the Supreme Court or the Eighth Circuit Court of Appeals was, nonetheless, clearly established. Here, the Court has not found a controlling case, or a robust consensus of persuasive authority, holding that discrimination based on an individual's sexual orientation or gender identity violated such person's constitutional rights.

However, the Court's finding does not result in the outcome the individual defendants seek. In Count IV of the third amended complaint, the plaintiffs alleged violations of the equal protection clause because of sexual harassment and a hostile work environment in addition to claims connected to gender-based discrimination. Filing 46 at 11. More importantly, the factual allegations in the third amended complaint report the type of conduct that is ordinarily seen in sexual harassment claims where gender identity or conformity is not an issue.

10

For example, both Meints and Pesetsky alleged that Allington continually made requests for sexual favors, sexual advances, and sexualized comments to them, some of which were written in text messages. Allington, according to the plaintiffs, requested "blow jobs" from both Meints and Pesetsky, and made many other similar crude sexual requests or suggestions. Pesetsky alleged that Allington exposed his genitals to him and others in the workplace, and reportedly made the comment; "since you're still legally a female, you could suck my dick and it wouldn't be gay." Filing 46 at 6. The plaintiffs may feel that Allington was motivated to act the way he did because of Pesetsky's gender identity, but what Allington was actually alleged to have said and done is sexual harassment without respect to the victim's gender identity.

The same is true with Mittan's claims. The plaintiffs alleged that Rescue Chief Shawna Schwartz continually asked Mittan about sex, sexual preferences, and sexual practices, and questioned others about Mittan's lifestyle with a focus on sex. Filing 46 at 6. It was clearly established in 2015 to 2020, that a supervisor's sexual harassment of a subordinate violated the Fourteenth Amendment and established a § 1983 action. *Crutcher-Sanchez v. Cnty. of Dakota*, 687 F.3d 979, 985 (8th Cir. 2012). Sexual harassment can include allegations of sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature. *Id.* Meints, Pesetsky, and Mittan have made a sufficient showing that Allington's and Schwartz' alleged conduct was unwelcome sexual harassment.

The plaintiffs have also alleged that the individual defendants' conduct created a hostile work environment. To prove a hostile work environment sexual harassment claim, a plaintiff must show (1) they were a member of a protected class; (2) they were subject to unwelcome harassment; (3) the

11

harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known about the harassment and failed to take appropriate remedial action. *Crutcher-Sanchez*, 687 F.3d at 985. The defendants essentially argue that the conduct allegedly attributed to Allington and Schwartz was not sufficiently severe or pervasive to alter the terms, conditions, or privileges of the plaintiff's employment. Filing 50 at 15-16. The defendants find it significant that no physical contact was alleged to have occurred.

To show that harassment affected a term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive to alter the conditions of the plaintiff's employment. *Crutcher-Sanchez*, 687 F.3d at 986. The harassing conduct must be extreme to be deemed to effect a change in the terms and conditions of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). To be actionable, the conduct must be extreme and not merely rude or unpleasant. *Alagna v. Smithville R-II Sch. Dist.*, 324 F.3d 975, 980 (8th Cir. 2003). A sexually hostile work environment must be both objectively and subjectively offensive—one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be offensive. *Id.* The totality of the circumstances are considered, including the frequency and severity of the discriminatory conduct; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id.*

At this stage of the proceedings, the plaintiffs have sufficiently alleged that Allington's and Schwartz' conduct was objectively offensive, extreme, severe, and pervasive. According to the allegations, Allington continually requested oral sex from Meints and Pesetsky, and made graphic and vulgar reference to female anatomy. He allegedly exposed himself to Pesetsky and

12

others in the workplace. Schwartz, according to the allegations, continually asked Mittan about his sexual practices and preferences, and asked others in the workplace about Mittan's sexual preferences. These allegations, presumed to be true, show conduct that was not merely rude or unpleasant, but conduct that is objectively, as well as subjectively to the plaintiffs, offensive, extreme, severe, and pervasive.

### 5. FIRST AMENDMENT QUALIFIED IMMUNITY

Count VI of the third amended complaint alleges that the defendants violated the plaintiffs' First Amendment rights to free speech and association. The individual defendants argue that Count VI should be dismissed on the grounds of qualified immunity.

It is clearly established that a governmental employer cannot condition employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression. *Connick v. Myers*, 461 U.S. 138, 142 (1983). In certain circumstances, the First Amendment protects a public employee's right to speak as a citizen addressing matters of public concern. *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty.,* 391 U.S. 563, 568 (1968). So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively. *Garcetti v. Ceballos,* 547 U.S. 410, 419 (2006).

The defendants argue that the plaintiffs failed to allege that they spoke as citizens on a matter of public concern. Instead, they reported their complaints about Allington and Schwartz to city officials or city employees, and not to the public at large. The plaintiffs' complaints, according to the defendants, were internal complaints of alleged discrimination that did not

inform the public that Wymore EMS was not properly discharging its duties. Filing 50 at 18-20.

In determining whether an employee's speech or associations are constitutionally protected, it must first be determined whether the employee spoke as a citizen, and on a matter of public concern. *Davidson v. City of Minneapolis, Minn.*, 490 F.3d 648, 655 (8th Cir. 2007). Contrary to the defendants' argument, however, whether an employee expresses her views inside the office, rather than publicly, is not dispositive. *Garcetti*, 547 U.S. at 420.

A two-part inquiry is followed to determine whether speech is protected. *McCullough v. Univ. of Ark. for Med. Sci.*, 559 F.3d 855, 865-66 (8th Cir. 2009). The first question asks: Can the plaintiffs' speech be fairly characterized as constituting speech on a matter of public concern? If the answer is no, then the plaintiffs' claim fails because no protected speech is at issue. *Id.* at 866. If the answer is yes, then the possibility of a First Amendment claim arises. *Anzuldua v. Ne. Ambulance and Fire Prot. Dist.*, 793 F.3d 822, 833 (8th Cir. 2015).

If the possibility of a First Amendment claim has arisen, then the second inquiry is to ask whether there is evidence to indicate that the speech has an adverse impact on the efficiency of the employer's operations. *Id.* If a sufficient adverse impact is not shown, then the defense of qualified immunity fails. *Id.* If a sufficient adverse impact is shown, then the right of the employee to comment on matters of public concern must be balanced with the employer's interest in promoting the efficiency of the public services it performs through its employees. *Id.*; *McCullough*, 559 F.3d at 866.

Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of the speech, and the speech

must relate to some matter of political, social, or other concern to the community. *Connick*, 461 U.S. at 146-47. It is clearly established that allegations of sexual harassment can be of concern to the public. *Sparr v. Ward*, 306 F.3d 589, 594 (8th Cir. 2002). Allegations of sexual harassment may also relate to an employee's private interests, and when speech relates to both the employee's private interests as well as matters of public concern, the speech is protected if it is primarily motivated by public concern. *Anzaldua*, 793 F.3d at 833.

Meints, Pesetsky, and Mittan's complaints about sexual harassment is speech that relates to some matter of social or other concern to the community. It is speech that also relates to their personal interest to not be sexually harassed at work. However, at this early stage of the proceedings, the allegations in the third amended complaint lean toward a finding that their complaints of sexual harassment were primarily motivated by a public concern, rather than concerns specific to each plaintiff's self-interest. For example, according to the allegations, the plaintiffs first raised their concerns about the sexual harassment directed at themselves as well as others with their immediate supervisors and within the chain of command, but when no remedial action was taken, Meints stepped outside the chain of command and took her concerns to Mayor Pike and City Attorney Carothers. Filing 46 at 7-8.

The allegations that each plaintiff reported personal harassment as well as harassment inflicted on others tends to move the needle toward speech reflecting a public concern rather than acting only in one's self-interest. Meints going outside the chain of command to address her concerns with the mayor also reflects that her speech was more out of a public concern than in pursuit of a private or personal interest. In addition, what the plaintiffs' speech *wasn't*

tends to come down on the side reflecting a public concern. The plaintiffs were not making statements pursuant to official duties. *See Garcetti*, 547 U.S. at 421. Neither were the plaintiffs' complaints made in response to, or in an effort to deflect from their own misconduct, *see McCullough*, 559 F.3d at 866, or made after first being reprimanded or suspended, *see Anzaldua*, 793 F.3d at 833, or made in an effort to protect their jobs in the face of a shifting political wind, *see Sparr*, 306 F.3d at 595. The Court finds that, at this stage of the proceedings, the plaintiffs have plausibly alleged that their complaints about sexual harassment were primarily motivated by a public concern.

Thus, having concluded that the allegations in the third amended complaint reflect that the plaintiffs' speech may fairly be characterized as speech on a matter of public concern, the Court necessarily finds that the allegations in the plaintiffs' third amended complaint raise the possibility of a First Amendment claim. *See Anzuldua*, 793 F.3d at 833. The next inquiry is to ask whether the allegations show the possibility that the plaintiffs' speech had an adverse impact on the efficiency of Wymore city government or the Wymore EMS. *Id.* If a sufficient adverse impact is not shown, then the defense of qualified immunity fails. *Id.*

Here, the individual defendants have not made an argument of any kind that the complaints Meints, Pesetsky, or Mittan made about sexual harassment somehow interfered with the efficiency of Wymore city government or the Wymore EMS. The Court also finds it implausible that the plaintiffs' complaints about sexual harassment, if true and unexplained as something other than what they appear to be, could adversely interfere with, or impact the efficiency of city government or the operation of emergency services. The Court concludes that Count VI of the plaintiffs' complaint, at this

stage of the proceedings, sufficiently alleges the violation of the plaintiffs' First Amendment rights of which a reasonable person would know.

### 6. MUNICIPAL LIABILITY

The defendants argue that the City and Wymore EMS must be dismissed from Counts IV, V, and VI because the plaintiffs failed to sufficiently allege facts showing the existence of an unconstitutional policy or custom. Filing 50 at 20-23. The plaintiffs respond arguing that they have alleged facts showing widespread practices of sexual harassment, and that the top decisionmakers for the city and Wymore EMS were directly involved in the unlawful conduct. Filing 51 at 14.

As a preliminary matter, as discussed above, Count V of the plaintiffs' third amended complaint alleging a Fourteenth Amendment retaliation claim must be dismissed for the reason that no court has found that the equal protection clause includes a right to be free from retaliation. *Burton,* 737 F.3d at 1237. The absence of an underlying constitutional violation by an individual defendant compels the dismissal of plaintiffs' municipal liability claim in Count V. *See Whitney v. City of St. Louis, Mo.* 887 F.3d 857, 860 (8th Cir. 2018).

A local governmental entity may be liable under § 1983 for its policies that cause constitutional torts. *Dean v. Cnty. of Gage,* 807 F.3d 931, 940 (8th Cir. 2015). Governmental policies may be set by those whose edicts or acts may fairly be said to represent official policy. *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 784 (1997). An unconstitutional governmental policy can be inferred from a single decision taken by the highest official responsible for setting policy in that area of the government's business. *Angarita v. St. Louis Cnty.*, 981 F.2d 1537, 1546 (8th Cir. 1992). "Municipal liability attaches only when the decisionmaker possesses final authority to establish municipal policy with

respect to the action taken." *Penbaur v. City of Cincinnati,* 475 U.S. 469, 481 (1986).

Here, the plaintiffs alleged that the individual defendants all possessed the authority to set official policy or had final decision-making authority in their respective roles. Filing 46 at 2-3. The plaintiffs have also alleged facts, when taken as true, that show a pervasive culture of sexual harassment and suppression of speech regarding issues of public concern. These allegations give rise to an inference that this culture is a policy decision made by one or more of the individual defendants whose edicts or acts may fairly be said to represent official policy. Which, if any, of the individuals had final decision-making authority to establish municipal policy with respect to the matters alleged in the plaintiffs' third amended complaint is a matter to be sorted out in discovery. The facts alleged must only raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiffs' claim. *See Twombly,* 550 U.S. at 545. The Court finds that the plaintiffs have sufficiently alleged plausible claims for municipal liability with respect to Counts IV and VI of the plaintiffs' third amended complaint.

## 8. JURY TRIAL

The defendants moved to strike the plaintiffs' demand for a jury trial. Filing 49 at 2. The defendants first argue that there is no right to a jury trial on claims for equitable relief. Filing 50 at 23. But here, the plaintiffs' claims are not entirely for equitable relief. Included in their prayer are awards for lost wages, the value of job-related benefits, and compensatory and punitive damages, all of which constitute legal relief in an action at law. Filing 46 at 13.

The defendants next argue that there is no right to a jury trial in actions filed by or against a Nebraska political subdivision. Filing 50 at 23. In support,

the defendants cite Neb. Rev. Stat. § 13-907 of the Nebraska Political Subdivision Tort Claims Act (PSTCA). Filing 50 at 23-24. The defendants are mistaken. Section 13-907 provides that in all claims "brought under the Political Subdivision Tort Claims Act" and five other specifically referenced Nebraska statutes (none of which are relevant here), "suits shall be heard and determined by the appropriate court without a jury." Here, the plaintiffs' claims are not the kind of actions authorized to be brought pursuant to the Nebraska PSTCA. There is no merit to the defendants' argument in this regard.

The defendants' third argument is that the plaintiffs are not entitled to a jury trial for any claims brought pursuant to § 1983. Filing 50 at 25. The Court disagrees. The right of trial by jury for suits at common law is secured by the Seventh Amendment. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 708-09 (1999). Suits at common law refers to suits in which legal rights are to be determined in contrast to those suits where equitable rights alone are recognized and equitable remedies are administered. *Chauffeurs, Teamsters and Helpers, Local No 391 v. Terry*, 494 U.S. 558, 564 (1990). A § 1983 suit seeking legal relief is an action at law, and as such, falls within the meaning of the Seventh Amendment. *City of Monterey,* 526 U.S. at 709. Here, the plaintiffs' suit seeks a determination of their legal rights and seeks legal relief. It is not one seeking equitable relief alone.

Finally, the defendants argue that the plaintiffs are not entitled to a jury for claims made pursuant to the Nebraska Fair Employment Practices Act and Title VII. Again, the Court disagrees. Before considering whether there is a constitutional right to a jury trial, a court must look to the statutory enactment to see if the constitutional question may be avoided. *See Curtis v. Loether,* 415 U.S. 189, 192, n.6 (1974).

19

In Title VII, congressional authorization to sue the state as an employer is clearly present. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 452 (1976). When read as a whole, Congress unmistakably expressed its intent to subject states to suits under Title VII. *Okruhlik v. Univ. of Ark. Ex rel. May*, 255 F.3d 615, 622-23 (8th Cir. 1999). Title VII specifically provides for any party to demand a trial by jury if the complaining party is seeking compensatory or punitive damages. 42 U.S.C. § 1981a(c)(1); *Landgraf v. USI Film Products*, 511 U.S. 244, 247 (1994). Here, the plaintiffs prayed for an award of compensatory and punitive damages in addition to other forms of legal relief. Filing 46 at 13. The defendants' argument that the plaintiffs are not entitled to a jury trial under Title VII is without merit.

The Nebraska Fair Employment Practices Act provides that governmental agencies created by the state may be sued for claims arising under the Act "in the same manner as provided by such law for suits against other employers." Neb. Rev. Stat. § 48-1126. Section 48-1120.01 provides that a Fair Employment Practices Act complaint alleging an unlawful employment practice is to be filed in the district court. Thus, if an aggrieved person can file a complaint against a private employer in the district court, then a complaint may also be filed in the district court, "in the same manner as provided by law," against a political subdivision created by the state. § 48-1126. Suits filed in the district court pursuant to the Fair Employment Practices Act are to be tried in the same manner "as any other civil action." Neb. Rev. Stat. § 48-1119(4). The guaranty of a jury trial in legal actions seeking legal relief is a part of Nebraska's fundamental law. *Jacobson v. Shresta*, 849 N.W.2d 515, 519 (Neb. 2014).

There is no merit to the defendants' motion to strike the plaintiffs' jury demand.

20

## IV. CONCLUSION

For the reasons stated above, the defendants' motion to dismiss plaintiff Zachariah Borzekofski from Count III of the plaintiffs' third amended complaint, as well as Count V of the plaintiffs' third amended complaint is granted. The defendants' motion to dismiss all other Counts in the plaintiffs' third amended complaint, and strike the plaintiffs' demand for a jury trial is denied.

IT IS ORDERED:

1.  Defendants' motion to dismiss Borzekofski from Count III of the plaintiffs' third amended complaint (filing 49) is granted.

2.  Defendants' motion to dismiss Count V of the plaintiffs' third amended complaint (filing 49) is granted.

3.  Defendants' motion to dismiss Counts I, II, III, IV and VI (filing 49) is denied.

4.  Defendants' motion to strike the plaintiffs' demand for a jury trial (filing 49) is denied.

5.  This matter is referred to the Magistrate Judge for case progression.

Dated this 3rd day of August, 2022.

BY THE COURT:

John M. Gerrard
United States District Judge